*In re* MARRIAGE OF CHARLES EDWARD LORENZI, Petitioner-Appellee, and JOYCE B. LORENZI, Respondent-Appellant.

Third District   No. 79-448

Opinion filed May 30, 1980.

Emmanuel F. Guyon, of Streator, for appellant.

Peter F. Ferracuti & Associates, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Mrs. Joyce Lorenzi appeals from a denial, without hearing, of her post-judgment petition for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72), subsequent to the dissolution of her marriage to Charles Edward Lorenzi.

In contemplation of divorce, Charles and Joyce Lorenzi met with Attorney Max Gulo, Mr. Lorenzi's attorney, at Attorney Gulo's office on October 4, 1978. At this meeting, three documents were executed. The first was a petition for dissolution of marriage signed by Charles Lorenzi. His prayer for relief included, *inter alia*, "[t]hat petitioner be awarded all non-marital property owned by the petitioner and petitioner's just portion of the marital property of the parties." The petition recited that "[t]he parties to this cause * * * own real estate located at 1404 North Otter Creek Street, Streator, subject to a lien at Streator Home Building and Loan. They own household goods and furnishings, and a 1977 Dodge Van, subject to lien at Union National Bank, Streator. They also are indebted for a Penney's charge account and a loan at Union National Bank." No indication was made in the petition as to how the petitioner wished this property to be divided.

The second document executed at that time and place was a response by Joyce B. Lorenzi, which "admits the marriage and the separation of the parties hereto, but denies all other allegations contained in the petition filed herein, and demands that the petitioner be required to give strict proof thereof."

The third document signed on October 4 in Attorney Gulo's office is a

"Consent and Appearance," whereby Joyce B. Lorenzi waived "all manner of summons, process or notice" and entered her "appearance in this cause in writing, as fully as if [she] had been served with summons issued out of this Court," consenting that judgment might be entered therein at the discretion of the court. No other documents bearing this date are included in the record. At this meeting with her husband's attorney, Mrs. Lorenzi was without counsel.

Trial on the cause was held two days later, on October 6, 1978. Mrs. Lorenzi was not summoned and did not appear. At trial, the only witness was Charles Lorenzi, who testified as to the grounds for divorce and further testified that the parties had entered into an oral property settlement, whereby Joyce Lorenzi would receive her hope chest, lamps, plants, stereo, tapes, records, a bean bag chair, and her personal belongings. Charles Lorenzi was to receive all the rest of the household goods and furnishings, the 1977 Dodge van, and the real estate owned by the parties. He was to pay all outstanding debts of the parties, these primarily being purchase money liens against the property he was to receive as per the "oral settlement." The same day, the court entered an order dissolving the marriage of the parties, and awarding the property in accordance with the "oral settlement" testified to by Charles Lorenzi, except that the bean bag chair and her personal belongings were not included in Mrs. Lorenzi's award. Mrs. Lorenzi was ordered to execute and deliver to Charles Lorenzi her quitclaim deed conveying her interest in the real estate.

Some six months later, in April of 1979, Joyce Lorenzi filed with the Circuit Court a petition for post-judgment relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) and an accompanying affidavit. In her petition she claimed that a "property settlement was represented to the court as agreed by the parties, but that, in fact, no such agreement was made by" her, that the terms of the settlement were unjust in that Charles Lorenzi received an equity in the couple's property valued at $23,800, whereas she, Joyce Lorenzi, received only $925 worth of property, and furthermore, that the agreement referred to in said judgment was effectuated by fraud practiced upon her in that the terms of the purported agreement were never explained to her by her then husband or by anyone representing her, and her then husband tricked her in the proceeding that followed and culminated in the judgment entered on October 6, 1978. Both parties submitted affidavits and briefs, and Attorney Gulo also submitted an affidavit. On June 6, 1979, the petition was denied without hearing.

Mrs. Lorenzi contends in her petition, and again on appeal, that the trial court erred in failing to identify the marital and nonmarital property of the respective parties, and in failing to justly apportion the parties'

marital property. Section 503(c) of our Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par 503(c)) states that "[i]n a proceeding for dissolution of marriage or declaration of the invalidity of marriage, * * * the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors * * *." However, section 502 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 502) states:

"(a) To promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral separation agreement containing provision for disposition of any property owned by either of them * * *

(b) The terms of the separation agreement * * * are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.

(c) If the court finds the separation agreement unconscionable, it may request the parties to submit a revised separation agreement or upon hearing, may make orders for the disposition of property, maintenance, child support, and other matters."

Section 405 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 405) states:

"If the respondent is in default, the court shall proceed to hear the cause upon testimony of petitioner taken in open court, and in no case of default shall the court grant a dissolution of marriage or legal separation or declaration of invalidity of marriage, unless the judge is satisfied that all proper means have been taken to notify the respondent of the pendency of the suit. Whenever the judge is satisfied that the interests of the respondent require it, the court may order such additional notice as may be required."

■■■ A reading of section 405 indicates that, to the extent confessions of judgment are valid in civil proceedings in this State, they are valid in proceedings to dissolve marriages. (See Ill. Rev. Stat. 1977, ch. 40, par. 410: "The process, practice and proceedings under this Act shall be the same as in other civil cases * * * .") It is clear from section 502(b) that the terms of a separation agreement are binding upon the court so long as the agreement is not unconscionable. In order to give effect to both sections 502 and 503, we must read 503 as mandating the court to denominate property as marital and nonmarital and to justly apportion the marital property of the parties, considering the factors therein enumerated, only in the absence of a conscionable settlement agreement entered into by the parties, as discussed in section 502. Therefore, the trial court did not err in

failing to denominate nonmarital and marital property and in declining to apportion the latter, in light of the uncontested evidence of a separation agreement between the parties, purporting to dispose of all their property.

■■ Evidence that a separation agreement is unconscionable may be "produced by the parties, on their own motion or on the request of the court." Because the petition for dissolution was uncontested, the parties brought forth no evidence of "the economic circumstances of the parties" or "any other relevant evidence" demonstrative of an unconscionable separation agreement. The trial court did not abuse its discretion by refraining from investigating the economic circumstances of the parties or any other relevant evidence in order to test whether the provisions of the separation agreement were unconscionable.

■ The legislature, in its wisdom, chose to allow separation agreements, binding on the court, to be evidenced orally (Ill. Rev. Stat. 1977, ch. 40, par. 502(a)), despite the invitation to fraud that is thereby created in cases of uncontested marital dissolution. Although the better practice might be for a trial court to make some inquiry into the circumstances surrounding the execution of such oral "agreements" when one of the parties thereto waives notice and appearance, the failure to do so is not necessarily an abuse of the discretion vested in the court by section 502(b). There is, however, no reason why relevant evidence of unconscionability may not be raised in connection with a proper petition for post-judgment relief. Should a separation agreement then be found unconscionable, or should the court find that no separation agreement had actually been entered into, the court would then be required to approve a conscionable agreement from the parties, if there is such an agreement, or to proceed under section 503, denominating the parties' property as marital and nonmarital and dividing it in accordance with the requirements of that section.

Mrs. Lorenzi's second contention is that the court erred in denying her section 72 petition without a hearing. The trial court, in its denial of the petition, made several findings of fact. It found that "[a] thorough discussion of the property that the Respondent Joyce B. Lorenzi wanted was held and at that time an oral agreement was entered into for the disposition of the property." The petition of Joyce Lorenzi, subscribed and sworn to by her, denies that she entered into the alleged property agreement. The court also found that "[t]he affidavit of Mr. Gulo indicates that the real property was pre-marital property and payments were made by Charles Edward Lorenzi on the mortgage." While this indeed was alleged in the affidavit of Mr. Gulo, such allegation was not uncontested. Mrs. Lorenzi's affidavit states that "since the marriage of the parties, they acquired real and personal property from their joint earnings and efforts" and that "Respondent [Mrs. Lorenzi] had worked from November 1976

to date of October 1, 1978, with all her earnings used to purchase said real and personal property," including "placement of funds against mortgage and liens."

The trial court states in its opinion that "[t]here was no allegation here that there was duress or fraud perpetrated on Joyce B. Lorenzi." In fact, Mrs. Lorenzi's verified petition does allege fraud. The court found that "at the second meeting [the meeting of October 4], she signed a quit-claim deed to the property which was heavily mortgaged to her husband-Charles Edward Lorenzi." This deed is not of record. Nowhere in the record is there any indication that such deed was signed on October 4, 1978, the date the "oral agreement" was allegedly entered into. Both the testimony of Mr. Lorenzi at trial and the order of the court referred to the signing of the deed as an event to occur in the future. Mr. Lorenzi's brief on appeal acknowledges that this deed was, indeed, executed subsequent to the court's order of October 6, 1978, which order, *inter alia*, compelled Mrs. Lorenzi to execute such a deed.

■ It is apparent from both the petition and answers thereto that the matters at issue were dehors the record and could not be determined by the court's examination of the records in the case. "Section 72(2) of the Civil Practice Act provides that, as to the matters not of record, the petition must be supported 'by affidavit or other appropriate showing.' This, together with section 69(2) of the Civil Practice Act (Ill. Rev. Stat. 1963, ch. 110, par. 69(2)), indicates that the evidence may be presented and the issues tried by affidavit, at least where the facts set forth in the affidavits do not controvert one another. (*Isaacs v. Shoreland Hotel* (1963), 40 Ill. App. 2d 108, 114, 188 N.E.2d 776.) Where, as here, however, the facts are controverted, the proof should be presented at an orderly hearing by examination of witnesses, under oath, subject to cross-examination." *Wilson v. Wilson* (1965), 56 Ill. App. 2d 187, 195, 205 N.E.2d 636; accord, *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 333 N.E.2d 659; *In re Estate of Wayne* (1971), 133 Ill. App. 2d 565, 273 N.E.2d 720.

Mr. Lorenzi argues that Mrs. Lorenzi's petition should be denied because it does not allege due diligence. "Since the inception of Section 72 it has come to be well settled that a petition to set aside a default judgment must adequately set forth sufficient facts to show first, a meritorious defense, and second, due diligence on the part of the defaulted party. [Citations.] Equally well settled since the decision in *Ellman v. DeRuiter*, 412 Ill. 285, 106 N.E.2d 350, is the concept that a section 72 petition 'invokes the equitable powers of the court, as justice and fairness require, to the end that one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstance.' (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 613, 190 N.E.2d 348.)

In short, * * * we interpret the * * * decisions to mean that even though there may have been a lack of due diligence in presenting a defense, a default judgment may nonetheless be set aside if justice and good conscience requires it." *Burkitt v. Downey* (1968), 102 Ill. App. 2d 373, 377, 242 N.E.2d 901; accord, *Hunt v. General Improvements, Inc.* (1977), 48 Ill. App. 3d 421, 362 N.E.2d 1143.

The question of Mrs. Lorenzi's diligence was raised in Attorney Gulo's affidavit and in Mr. Lorenzi's trial brief. The court did not deny this petition because of a lack of due diligence. It denied it on the basis of factual findings, made without the benefit of a hearing, based upon contradictory affidavits. Mrs. Lorenzi's affidavit recites that she was unrepresented by counsel at the time of the alleged negotiations, at the time of the execution of the waiver of notice and appearance, and at the time of the rendition of judgment in the dissolution of her marriage. She claims, further, that she was not notified immediately upon the rendition of this judgment, although she fails to state when she was so notified. She has, by the time her petition was filed, acquired representation by counsel. It is unclear when such counsel was first retained.

■■ "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1977, ch. 110, par. 33(3).) The trial court, in disposing of this case on what it viewed to be the merits, even though the question of diligence was raised by Mr. Lorenzi, must have found the petition adequate in respect to the allegation of due diligence. Therefore, this issue, along with the others raised, is a proper one for an evidentiary hearing.

For the reasons herein expressed, therefore, the judgment of the Circuit Court of La Salle County, denying the petition for section 72 relief, is hereby reversed, and the cause is remanded for hearing on the petition of Joyce Lorenzi.

Reversed and remanded.

STENGEL and SCOTT, JJ., concur.